1
2
3
4
5
6
7        UNITED STATES DISTRICT COURT
8           EASTERN DISTRICT OF CALIFORNIA
9
10   ALFREDO GONZALEZ,                CASE NO.    1:10-cv-01287-GBC (PC)

11                    Plaintiff,       COMPLAINT DISMISSED WITH LEAVE TO
12                                      AMEND
        v.
13                                      (ECF No. 1)
     A. DIAZ, et al.,
14                                      AMENDED COMPLAINT DUE WITHIN
                     Defendants.        THIRTY DAYS
15
16   _____/
17
18                        **SCREENING ORDER**

19   **I.    PROCEDURAL HISTORY**

20          Plaintiff Alfredo Gonzalez ("Plaintiff") is an inmate in the custody of the California

21   Department of Corrections and Rehabilitation ("CDCR"), and is proceeding pro se and in

22   forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff filed this

23   action on July 20, 2010.  (ECF No. 1.)  No other parties have appeared.
24
25          Plaintiff's Complaint is now before the Court for screening.  For the reasons set forth

26   below, the Court finds that Plaintiff failed to state a claim upon which relief may be granted.

27
                                1

## II.   SCREENING REQUIREMENTS

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2).  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'"  Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555).  While factual allegations are accepted as true, legal conclusions are not.  Iqbal, 129 S.Ct. at 1949.

## III.   SUMMARY OF COMPLAINT

Plaintiff alleges that his First Amendment rights were violated by Defendants' retaliatory conduct, that his due process rights were violated, and that he was denied access to the courts.  Plaintiff names the following individuals as Defendants: A. Diaz, R. Davis, R. Chavez, R. Schneider, I. Bueno, T. Cano, L. Nelson, J. Jones, M. Junious, and

N. Grannis.

Plaintiff alleges the following: On April 16, 2008, Plaintiff was placed in administrative segregation ("ad-seg") for possession of an inmate manufactured weapon. Plaintiff appeared before the Institutional Classification Committee ("ICC") for his initial hearing on April 25, 2008.  Defendant Diaz was the acting captain.  On May 23, 2008, Plaintiff had a rule violation report ("RVR") hearing where Diaz was the senior hearing officer.  Plaintiff was found guilty of possession of a weapon.  Plaintiff filed a grievance in response to the guilty verdict and Diaz's participation in both of his hearings.  On June 26, 2008, Plaintiff appeared before the ad-seg ICC and was assessed an indeterminate term in the secured housing unit ("SHU").

On October 1, 2008, Plaintiff and other inmates were placed in holding cages to be processed for a transfer to the SHU.  The inmates' property was also being processed; however, Plaintiff's property was not present or being processed.  Plaintiff asked Diaz about his property.  Diaz responded that Plaintiff would get his property when he stopped filing 602s.

Plaintiff did not receive an ICC hearing within ten days of his arrival, nor did he receive a hearing within thirty days of the expiration of his MERD.  On December 15, 2008, Plaintiff received a 114d from Defendant Schneider that stated, in part, that Plaintiff was being retained in SHU for an indeterminate term and would appear before ICC on December 18, 2008.  Plaintiff told Schneider that his due process rights were being violated as his MERD was December 1, 2008.  Schneider responded that Plaintiff should not have filed so many 602s.

On December 18, 2008, Plaintiff appeared before the ICC.  He was issued an

3

indeterminate SHU term and said to be a threat to the safety and security of the institution. Plaintiff told the ICC, composed of Defendants Davis, Chavez, Schneider, and Bueno, that he had not received the required hearing prior to this one.  Davis told him to file another 602.  Plaintiff filed a grievance against the ICC on December 10, 2008.

Plaintiff still did not have his personal property, so he filed a grievance.  As Plaintiff was being prepared for a transfer, his property was "transpacked" by SHU staff on June 8, 2009.  Plaintiff informed SHU staff that he had other property in a different building that also needed to be transferred.  Plaintiff's property was located and he was told that it would either be on the bus with Plaintiff for the transfer the following day or it would be sent in three to four weeks. Plaintiff was transferred on June 9, 2009.  Plaintiff's personal property was finally returned to him on October 5, 2009; however, books were still missing.

Plaintiff seeks declaratory relief, compensatory, exemplary, and punitive damages among other listed relief.

IV.    **ANALYSIS**

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  "Section 1983 . . . creates a cause of action for violations of the federal Constitution and laws."  Sweaney v. Ada County, Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997) (internal quotations omitted).

//

4

### A.    Retaliation Claim

Plaintiff states that he is being retaliated against by Defendants Davis, Chavez, Schneider, Bueno, Diaz, Nelson, Cano, and Jones for exercising his constitutional rights.

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements:  (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

Plaintiff has failed to plead facts sufficient to sustain a claim of retaliation by prison officials.  Plaintiff states that all Defendants were retaliating against him because of his filing of grievances.  Plaintiff claims that Defendants Davis, Chavez, Schneider, and Bueno retaliated against him by refusing him an ICC hearing and by giving him an indeterminate SHU term.  Plaintiff claims that Defendant Diaz retaliated against him by keeping his personal property from him.  Plaintiff claims that Defendants Nelson, Cano, and Jones retaliated against him by inappropriately screening out Plaintiff's grievances.

Filing a grievance is a protected action under the First Amendment. Valandingham v. Bojorquez, 866 F.2d 1135, 1138 (9th Cir. 1989).  Refusing a hearing and an indeterminate SHU sentence would be adverse actions.  Keeping Plaintiff's personal property from him would be an adverse action.  Inappropriately screening out Plaintiff's grievances would also be an adverse action.  Thus, Plaintiff has satisfied the first and third prongs of the retaliation standard as to all eight Defendants.

With respect to the fourth prong, "[it] would be unjust to allow a defendant to escape

5

liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity . . . ." Mendocino Envtl. Ctr. v. Mendocino County, 192 F.3d 1283, 1300 (9th Cir. 1999). The correct inquiry is to determine whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities. Rhodes, 408 F.3d at 568-69 (citing Mendocino Envtl. Ctr., 192 F.3d at 1300). Though Plaintiff has failed to plead any facts as to whether he was chilled because of the above described adverse actions, the Court finds that he has satisfied the fourth prong because a person of ordinary firmness would be chilled by such activities.

The second element of a prisoner retaliation claim focuses on causation and motive. See Brodheim v. Cry, 584 F.3d 1262, 1271 (9th Cir. 2009). A plaintiff must show that his protected conduct was a "'substantial' or 'motivating' factor behind the defendant's conduct." Id. (quoting Morgan, 874 F.2d at 1314). Although it can be difficult to establish the motive or intent of the defendant, a plaintiff may rely on circumstantial evidence. Bruce v. Ylst, 351 F.3d 1283, 1289 (9th Cir. 2003) (finding that a prisoner established a triable issue of fact regarding prison officials' retaliatory motives by raising issues of suspect timing, evidence, and statements); Hines v. Gomez, 108 F.3d 265, 267-68 (9th Cir. 1997); Pratt v. Rowland, 65 F.3d 802, 808 (9th Cir. 1995) ("timing can properly be considered as circumstantial evidence of retaliatory intent").

As to Defendants Davis, Chavez, Schneider, and Bueno, Plaintiff has not alleged sufficient facts demonstrating causation and motive. Plaintiff states that he told Schneider that he had not received a hearing within the time limitations and Schneider told him that he should not have been filing so many grievances. During an ICC hearing, Plaintiff informed Defendants Davis, Chavez, Schneider, and Bueno of the due process violations

and Davis responded that he should go file a grievance since he had so much practice at it.  Plaintiff fails to demonstrate that these Defendants were aware of the alleged due process violations before the ICC hearing.  Plaintiff told Schneider on the day Plaintiff received notice that he was going to receive a hearing.  Plaintiff did not state that he had previously filed a grievance related to this lack of due process, which Defendants could have had knowledge of.

As to Defendant Diaz, Plaintiff stated that when Plaintiff asked Diaz where his property was, Diaz responded that Plaintiff should not have filed all of his 602s.  Plaintiff has demonstrated causation as to Diaz.

As to Defendants Nelson, Cano, and Jones, Plaintiff details many grievances and many screen outs.  However, Plaintiff does not demonstrate any causation or motive for these three Defendants.  He merely states that he repeatedly screened out Plaintiff's grievances for a multitude of reasons.

With respect to the fifth prong, a prisoner must affirmatively allege that "the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution or was not tailored narrowly enough to achieve such goals."  Rizzo, 778 F.2d at 532.  This is not a high burden to reach.  See id. (prisoner's allegations that search was arbitrary and capricious sufficient to satisfy this inquiry)

As to Defendants Davis, Chavez, Schneider, and Bueno, Plaintiff has not demonstrated that him not receiving a hearing was anything more than negligence.  Also, Plaintiff also fails to demonstrate that the indeterminate SHU term was not appropriate considering Plaintiff's violation.  As to Defendant Diaz, it again appears that keeping Plaintiff's property from him could have been a result of Plaintiff being held in the SHU,

which would serve a legitimate penological goal.  As to Defendants Nelson, Cano, and Jones, in describing the screen-outs, Plaintiff cites the reason given on each.  These appear to be appropriate and would serve a legitimate penological purpose.  It appears that Plaintiff just did not agree with the reasons and resulting screen-outs.  Thus, Plaintiff has failed to meet the fifth prong as to all Defendants.

Because Plaintiff has failed to allege sufficient facts to satisfy all five prongs of his retaliation claim, the Court finds that he has failed to state a claim upon which relief could be granted.  The Court will give Plaintiff leave to amend and cure the deficiencies noted herein.

### B.    Due Process Claim

Plaintiff alleges violations of his rights to due process by Defendants in relation to not receiving timely hearings and the retention of his property.

The Due Process Clause protects against the deprivation of liberty without due process of law.  Wilkinson v. Austin, 545 U.S. 209, 221 (2005).  In order to invoke the protection of the Due Process Clause, a plaintiff must first establish the existence of a liberty interest for which the protection is sought.  Id.  Liberty interests may arise from the Due Process Clause itself or from state law.  Id.  The Due Process Clause itself does not confer on inmates a liberty interest in avoiding "more adverse conditions of confinement." Id.  Under state law, the existence of a liberty interest created by prison regulations is determined by focusing on the nature of the deprivation.  Sandin v. Conner, 515 U.S. 472, 481-84 (1995). Liberty interests created by state law are "generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Id. at 484; Myron v. Terhune, 476 F.3d 716, 718 (9th

1  Cir. 2007).

2          1.    Hearing

3          Plaintiff alleges that his due process rights were violated by Defendants when they

4  failed to have a timely hearing as related to Plaintiff's continuing SHU confinement.

5

6          Constitutionally protected liberty interests "will be generally limited to freedom from

7  restraint which, while not exceeding the sentence in such an unexpected manner as to give

8  rise to protection by the Due Process Clause of its own force, nonetheless imposes

9  atypical and significant hardship on the inmate in relation to the ordinary incidents of prison

10  life." Sandin v. Connor, 515 U.S. 472, 483–84 (1995).  Determining whether a prison

11  condition is "atypical and significant" requires consideration of the specific facts of each

12  case. Keenan v. Hall, 83 F.3d 1083, 1089 (9th Cir. 1996).  The Court considers three

13  guideposts in framing the inquiry: (1) whether the challenged condition mirrored those

14  conditions imposed upon inmates in administrative segregation and protective custody, and

15  thus comported with the prison's discretionary authority; (2) the duration of the condition

16  and the degree of restraint imposed; and (3) whether the state's action will invariably affect

17  the duration of the prisoner's sentence. Serrano v. Francis, 345 F.3d 1071, 1078 (9th Cir.

18  2003).

19

20          Challenging the sufficiency of procedures employed in initially placing a prisoner in

21  the secured housing unit is different from challenging the sufficiency of procedures used

22  in determining whether to retain a prisoner in administrative segregation. See Hewitt v.

23  Helms, 459 U.S. 460, 477 n. 9, overruled on other grounds by Sandin, 515 U.S. 472;

24  Toussaint v. McCarthy, 801 F.2d 1080, 1101 (9th Cir. 1986); Sheley v. Dugger, 833 F.2d

25  1420 (11th Cir. 1987).  As the United State Supreme Court noted in dicta:

26

27

9

1

2

3

4

5

6

7

8

> Prison officials must engage in some sort of periodic review of the confinement of [administratively segregated] inmates. This review will not necessarily require that prison officials permit the submission of any additional evidence or statements. The decision whether a prisoner remains a security risk will be based on facts relating to a particular prisoner-which will have been ascertained when determining to confine the inmate to administrative segregation-and on the officials' general knowledge of prison conditions and tensions, which are singularly unsuited for "proof" in any highly structured manner.

9

Hewitt, 459 U.S. at 477 n. 9, overruled on other grounds by Sandin, 515 U.S. 472. Periodic

10

reviews that a prisoner receives while being held in the administrative segregation unit are

11

sufficient procedural protections to satisfy the Due Process Clause. See Hewitt, 459 U.S.

12

at 477 n. 9, overruled on other grounds by Sandin, 515 U.S. 472; Toussaint, 801 F.2d at

13

1101 (instructing that while prison officials must engage in some sort of periodic review of

14

the confinement of prisoners held in administrative segregation, this review does not

15

16

require that prison officials permit the submission of additional evidence or statements);

17

Black v. Parke, 4 F.3d 442, 447–48 (6th Cir. 1993); Sheley v. Dugger, 833 F.2d 1420 (11th

18

Cir. 1987); Pina v. McGrath, 299 Fed.Appx. 726, 727 (9th Cir. 2008) (unpublished); see

19

also McKeithan v. Beard, 322 Fed.Appx. 194, 199 (3d Cir. 2009) (unpublished).

20

Plaintiff states that he was placed in the SHU in October 2008 and did not receive

21

a hearing until December 18, 2008. Plaintiff states that he told Defendant Schneider that

22

23

he had not received a hearing on the same day that he received notice that a hearing had

24

been scheduled. Plaintiff does not allege that any of the Defendants were aware that

25

Plaintiff had not received a hearing. Nor does Plaintiff allege that any of the named

26

Defendants were responsible for setting a hearing. As currently pleaded, the Court is

27

unable to determine if Plaintiff's due process rights were violated.  Thus, Plaintiff will be given leave to amend.  In his amended complaint, Plaintiff must describe in greater detail who knew he hadn't had a hearing, who was responsible for setting the hearings, etc.

2.    Property

Plaintiff alleges that his due process rights were violated by Defendant Diaz who kept his property from him.

The Due Process Clause protects prisoners from being deprived of property without due process of law, Wolff, 418 U.S. at 556, and prisoners have a protected interest in their personal property, Hansen v. May, 502 F.2d 728, 730 (9th Cir.1974).  However, while an authorized, intentional deprivation of property is actionable under the Due Process Clause, Hudson v. Palmer, 468 U.S. 517, 532 n. 13 (1984) (citing Logan v. Zimmerman Brush Co., 455 U.S. 422, 435-36 (1982)); Quick v. Jones, 754 F.2d 1521, 1524 (9th Cir. 1985), neither negligent nor unauthorized intentional deprivations of property by a state employee "constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available," Hudson, 468 U.S. at 533.

California Law provides an adequate post-deprivation remedy for any property deprivations. See Cal. Gov't Code §§ 895; Barnett v. Centoni, 31 F.3d 813, 816-17 (9th Cir. 1994).  California's Tort Claims Act requires that a tort claim against a public entity or its employees be presented to the California Victim Compensation and Government Claims Board, formerly known as the State Board of Control, no more than six months after the cause of action accrues.  Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950-950.2 (West 2006).  Presentation of a written claim, and action on or rejection of the claim, are

conditions precedent to suit.  State v. Superior Court of Kings County (Bodde), 90 P.3d
116, 123 (2004); Mangold v. California Pub. Utils. Comm'n, 67 F.3d 1470, 1477 (9th Cir.
1995).  To state a tort claim against a public employee, a plaintiff must allege compliance
with the Tort Claims Act.  State v. Superior Court, 90 P.3d at 123; Mangold, 67 F.3d at
1477; Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 627 (9th Cir. 1988).

Plaintiff states that Defendant Diaz kept his property from him in violation of his due
process rights.  This conclusory allegation does not demonstrate anything in relation to this
claim.  Also, Plaintiff does not include proof of compliance with the California Tort Claims
Act.  Plaintiff will be given leave to amend.

### C.   Access to Courts

Plaintiff appears to be alleging that he was denied access to the courts by
Defendants through their mishandling of his appeals.

Inmates have a fundamental constitutional right of access to the courts.  Lewis v.
Casey, 518 U.S. 343, 346 (1996).  However, the right is limited to direct criminal appeals,
habeas petitions, and civil rights actions.  Id. at 354.  Claims for denial of access to the
courts may arise from the frustration or hindrance of "a litigating opportunity yet to be
gained" (forward-looking access claim) or from the loss of a meritorious suit that cannot
now be tried (backward-looking claim).  Christopher v. Harbury, 536 U.S. 403, 412-15
(2002).  Forward-looking claims allege "that systemic official action frustrates a plaintiff or
plaintiff class in preparing and filing suits at the present time."  Christopher, 536 U.S. at
413.  In these cases that have yet to be litigated, "the justification for recognizing that
[forward-looking] claim, is to place the plaintiff in a position to pursue a separate claim for
relief once the frustrating condition has been removed."  Id.  As part of the requirement to

plead an injury, a plaintiff must allege that "a nonfrivolous legal claim had been frustrated or was being impeded." Lewis, 518 U.S. at 353; see also Christopher, 536 U.S. at 415. Simply stating that a claim is "nonfrivolous" due to the action of a government official will not satisfy the actual injury requirement. Christopher, 536 U.S. at 415. Rather, the nonfrivolous "underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." Id. at 416. The plaintiff must describe this "predicate claim . . . well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope." Id. The complaint should "state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a) just as if it were being independently pursued, and a like plain statement should describe any remedy available under the access claim and presently unique to it." Id. at 417-18; see Lewis, 518 U.S. at 353 n. 3 ("Depriving someone of an arguable (though not yet established) claim inflicts actual injury because it deprives him of something of value-arguable claims are settled, bought and sold.  Depriving someone of a frivolous claim, on the other hand, deprives him of nothing at all, except perhaps the punishment of Rule 11 sanctions.").

When a prisoner asserts that he was denied access to the courts and seeks a remedy for a lost opportunity to present a legal claim, he must show: (1) the loss of a non-frivolous or arguable underlying claim; (2) the official acts that frustrated the litigation; and (3) a remedy that may be awarded as recompense but that is not otherwise available in a future suit. Phillips v. Hust, 477 F.3d 1070, 1076 (9th Cir. 2007) (citing Christopher, 536 U.S. at 413-414, overruled on other grounds, Hust v. Phillips, 129 S.Ct. 1036 (2009)).

The Court has difficulty discerning which facts Plaintiff is alleging in support of his

13

denial of access to the courts claim.  Plaintiff states that his 602 grievances have been

mishandled.  Having reviewed the allegations in the Complaint, the Court finds that Plaintiff

has failed to state a claim for denial of access to the courts.  Plaintiff fails to describe in

detail any action that he has been unable to pursue and also fails to show how such action

would not be frivolous.  Thus, the Court dismisses this claim and will grant Plaintiff leave

to amend this claim.

>    D.    **Inmate Appeal Process**

Plaintiff appears to be alleging that Defendants mishandled his grievance forms.

Defendants' actions in responding to Plaintiff's appeals alone cannot give rise to any

claims for relief under Section 1983 for violation of due process.  "[A prison] grievance

procedure is a procedural right only, it does not confer any substantive right upon the

inmates."  Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (citing Azeez v.

DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982)); see also Ramirez v. Galaza, 334 F.3d 850,

860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement to

a specific grievance procedure); Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001)

(existence of grievance procedure confers no liberty interest on prisoner); Mann v. Adams,

855 F.2d 639, 640 (9th Cir. 1988).  "Hence, it does not give rise to a protected liberty

interest requiring the procedural protections envisioned by the Fourteenth Amendment."

Azeez, 568 F. Supp. at 10; Spencer v. Moore, 638 F. Supp. 315, 316 (E.D. Mo. 1986).

Actions in reviewing a prisoner's administrative appeal cannot serve as the basis for liability

under a Section 1983 action.  Buckley, 997 F.2d at 495.

Because Plaintiff has neither a liberty interest nor a substantive right in inmate

appeals, Plaintiff fails to state a claim in this regard.  Because amendment of this claim

would be futile, the Court advises Plaintiff that he would be well-served devoting his energy to pursuing his other claims.

### E.   Conspiracy

Plaintiff makes one statement that he is pursuing a conspiracy claim.

To state a viable conspiracy claim pursuant to Section 1983, a plaintiff must "state specific facts to support the existence of the claimed conspiracy." Burns v. Cnty. of King, 883 F.2d 819, 821 (9th Cir. 1989) (citation omitted).  The Ninth Circuit has held that "each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2002) (quoting United Steelworkers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1541 (9th Cir. 1989) (citation omitted)).  Plaintiff must therefore show "an agreement or 'meeting of the minds' to violate constitutional rights."  Id. However, "[s]uch an agreement need not be overt, and may be inferred on the basis of circumstantial evidence such as the actions of the defendants." Mendocino Envtl. Ctr. v. Mendocino Cnty., 192 F.3d 1283, 1301 (9th Cir. 1999) (citation omitted).  Accordingly, "a showing that the alleged conspirators have committed acts that are unlikely to have been undertaken without an agreement" may indicate the existence of a conspiracy. Id. (citation and internal quotation marks omitted).

Section 1985 proscribes conspiracies that interfere with an individual's civil rights. Section 1985(2) proscribes conspiracies for the purpose of impeding the due course of justice in any state with the intent to deny equal protection of the laws, and Section 1985(3) proscribes conspiracies that deny equal protection of the law or equal privileges and immunities. Coverdell v. Dep't. of Soc. and Health Svcs., State of Washington, 834 F.2d

758, 767 (9th Cir. 1987).  An allegation of racial or class-based discrimination is required to state a claim for relief under either Section 1985(2) or Section 1985(3).  Bretz v. Kelman, 773 F.2d 1026, 1028-1030 (9th Cir. 1985).

To state a cause of action under Section 1985(3), Plaintiff must allege: (1) a conspiracy, (2) to deprive any person or class of persons of the equal protection of the laws, (3) an act by one of the conspirators in furtherance of the conspiracy, and (4) a personal injury, property damage or deprivation of any right or privilege of a citizen of the United States.   Gillispie v. Civiletti, 629 F.2d 637, 641 (9th Cir. 1980); Giffin v. Breckenridge, 403 U.S. 88, 102-03 (1971).  Section 1985 applies only where there is a racial or other class-based discriminatory animus behind the conspirators' actions.  Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1536 (9th Cir. 1992).

In interpreting these standards, the Ninth Circuit has held that a claim under Section 1985 must allege specific facts to support the allegation that defendants conspired together.  Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 626 (9th Cir. 1988). A mere allegation of conspiracy without factual specificity is insufficient to state a claim under 42 U.S.C. § 1985.  Id.; Sanchez v. City of Santa Anna, 936 F.2d 1027, 1039 (9th Cir. 1991).

Plaintiff makes one statement that Defendant Diaz conspired to retaliate against him.  He states nothing else relevant to this claim.  His claim is missing the most basic elements: meeting of the minds and violation of constitutional rights.  Plaintiff does not demonstrate a meeting of the minds between Defendants.  He does not say which other Defendants were involved in the conspiracy.  The facts, as currently pleaded, Plaintiff does not identify any violations of any constitutional rights.  Thus, this claim is dismissed.

16

Plaintiff will be given leave to amend.

### F.   Personal Participation and Supervisory Liability

Plaintiff appears to be arguing that Defendant Junious is liable for the conduct of subordinates as, according to Plaintiff's statement of facts, he was not present and did not participate in the complained of conduct.  In fact, Defendant Junious is not mentioned at all in the factual allegations that make up Plaintiff's Complaint.

Under Section 1983, Plaintiff must demonstrate that each named Defendant personally participated in the deprivation of his rights.  Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  The Supreme Court has emphasized that the term "supervisory liability," loosely and commonly used by both courts and litigants alike, is a misnomer.  Iqbal, 129 S.Ct. at 1949.  "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior."  Id. at 1948.  Rather, each government official, regardless of his or her title, is only liable for his or her own misconduct, and therefore, Plaintiff must demonstrate that each defendant, through his or her own individual actions, violated Plaintiff's constitutional rights.  Id. at 1948-49.

When examining the issue of supervisor liability, it is clear that the supervisors are not subject to vicarious liability, but are liable only for their own conduct.  Jeffers v. Gomez, 267 F.3d 895, 915 (9th Cir. 2001); Wesley v. Davis, 333 F.Supp.2d 888, 892 (C.D.Cal. 2004).  In order to establish liability against a supervisor, a plaintiff must allege facts demonstrating (1) personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.  Jeffers, 267 F.3d at 915; Wesley, 333 F.Supp.2d at 892.  The sufficient causal

connection may be shown by evidence that the supervisor implemented a policy so deficient that the policy itself is a repudiation of constitutional rights.  Wesley, 333 F.Supp.2d at 892 (internal quotations omitted).  However, an individual's general responsibility for supervising the operations of a prison is insufficient to establish personal involvement.  Id. (internal quotations omitted).

Supervisor liability under Section 1983 is a form of direct liability.  Munoz v. Kolender, 208 F.Supp.2d 1125, 1149 (S.D.Cal. 2002).  Under direct liability, Plaintiff must show that Defendant breached a duty to him which was the proximate cause of his injury. Id.  "'The requisite causal connection can be established . . . by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury.'"  Id. (quoting Johnson v. Duffy, 588 F.2d 740, 743-744 (9th Cir. 1978)).

Plaintiff has not alleged facts demonstrating that Defendant Junious personally acted to violate his rights.  In his Amended Complaint, Plaintiff needs to specifically link each Defendant to a violation of his rights.  Plaintiff shall be given the opportunity to file an amended complaint curing the deficiencies in this respect.

## V.   CONCLUSION AND ORDER

The Court finds that Plaintiff's Complaint fails to state any Section 1983 claims upon which relief may be granted.  The Court will provide Plaintiff time to file an amended complaint to address the potentially correctable deficiencies noted above.  See Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).  In his Amended Complaint, Plaintiff must demonstrate that the alleged incident or incidents resulted in a deprivation of his constitutional rights.  Iqbal, 129 S.Ct. at 1948-49.  Plaintiff must set forth "sufficient factual

matter . . . to 'state a claim that is plausible on its face.'" Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555). Plaintiff must also demonstrate that each defendant personally participated in the deprivation of his rights.  Jones, 297 F.3d at 934.

Plaintiff should note that although he has been given the opportunity to amend, it is not for the purposes of adding new claims or defendants, other than as requested by the Court.  Plaintiff should focus the amended complaint on claims and defendants discussed herein.

Finally, Plaintiff is advised that Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading.  As a general rule, an amended complaint supersedes the original complaint.  See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967).  Once an amended complaint is filed, the original complaint no longer serves any function in the case.  Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly and boldly titled "First Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury.

Based on the foregoing, it is HEREBY ORDERED that:

1.      Plaintiff's complaint is dismissed for failure to state a claim, with leave to file an amended complaint within thirty (30) days from the date of service of this order;

2.      Plaintiff shall caption the amended complaint "First Amended Complaint" and refer to the case number 1:10-cv-1287-GBC (PC); and

//

///

19

1        3.      If Plaintiff fails to comply with this order, this action will be dismissed for

2           failure to state a claim upon which relief may be granted.

3    IT IS SO ORDERED.

4

5    Dated:    July 6, 2011

                         UNITED STATES MAGISTRATE JUDGE