1
2
3
4
5

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALFREDO GONZALEZ, | CASE NO. 1:10-cv-01287-GBC  (PC) |
| Plaintiff, | ORDER DENYING PLAINTIFF'S MOTION TO RECONSIDER OPENING CASE |
| v. | Doc. 16 |
| A. DIAZ, et al., | ORDER FINDING THAT PLAINTIFF'S FIRST AMENDED COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED |
| Defendants. | |
| / | Doc. 20 |

## I. Procedural History

On July 20, 2010, Plaintiff Alfredo Gonzalez ("Plaintiff"), a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983. Doc. 1. On July 6, 2011, the Court dismissed Plaintiff's complaint for failure to state a claim upon which relief may be granted and ordered Plaintiff to file an amended complaint within thirty days. 28 U.S.C. §§ 1915A and 1915(e). Doc. 7. On July 26, 2011, the Court granted Plaintiff's first motion for an extension of time to file an amended complaint. Doc. 9. On October 4, 2011, the Court granted Plaintiff's second motion for an extension of time to file an amended complaint. Doc. 11. On December 14, 2011, the Court granted Plaintiff's third motion for an extension of time to file an amended complaint. Doc. 13. As of March 22, 2012, Plaintiff had not filed an amended complaint or requested an additional extension of time. As a result, there was no pleading on file that set forth any claims upon which relief may be granted under § 1983. Thus, pursuant to 28 U.S.C. §§ 1915A and 1915(e), the Court dismissed Plaintiff's complaint, with prejudice, based on Plaintiff's failure to state any claims upon

which relief may be granted under § 1983. Doc. 14.

On April 2, 2012, Plaintiff filed a motion to reconsider, stating he had not received all of the Court's orders, and he would file an amended complaint within thirty (30) days. Doc. 16. On May 10, 2012, the Court ordered Plaintiff to file an amended complaint prior to considering whether to grant Plaintiff's motion to reconsider. Doc. 17. On June 1, 2012, Plaintiff filed a first amended complaint, but it was unsigned. Doc. 18. On June 15, 2012, the Court issued an order striking Plaintiff's first amended complaint, as unsigned pursuant to Fed. R. Civ. P. 11(a). Doc. 20. The Court ordered Plaintiff file a signed first amended complaint within thirty (30) days. *Id.* On July 16, 2012, Plaintiff filed a signed first amended complaint. Doc. 20.

## II. Rule 60(b) Motion for Reconsideration

Plaintiff moves for the Court to reconsider its order dismissing this action, with prejudice. Doc. 16.

Federal Rule of Civil Procedure 60(b) governs relief from orders of the district court. The Rule permits a district court to relieve a party from a final order or judgment on grounds of: "(1) mistake, inadvertence, surprise, or excusable neglect; . . . (3) fraud . . . by an opposing party, . . . or (6) any other reason that justifies relief." Fed. R. Civ. P. 60(b). The motion for reconsideration must be made within a reasonable time. *Id.* Rule 60(b)(6) "is to be used sparingly as an equitable remedy to prevent manifest injustice and is to be utilized only where extraordinary circumstances . . ." exist. *Harvest v. Castro*, 531 F.3d 737, 749 (9th Cir. 2008). The moving party "must demonstrate both injury and circumstances beyond his control . . . ." *Id.* Local Rule 230(j) requires Plaintiff to show "what new or different facts or circumstances are claimed to exist which did not exist or were not shown upon such prior motion, or what other grounds exist for the motion." "A motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law," and it "may *not* be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Marilyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009) (emphasis in original).

1      Plaintiff failed to timely file an amended complaint, despite a combined seven-month

2 extension of time. Additionally, the Court has reviewed Plaintiff's first amended complaint and finds

3 that it fails to state a claim. Therefore, the Court does not find that Plaintiff presented newly

4 discovered evidence, clear error, or an intervening change in the law. Thus, the Court denies

5 Plaintiff's motion to reconsider this Court's order dismissing this action, with prejudice.

6      However, the Court will screen Plaintiff's first amended complaint, in order to demonstrate

7 that granting Plaintiff's motion to reconsider would be futile.

8                   **III. Screening Requirement and Standard**

9      The Court is required to screen complaints brought by prisoners seeking relief against a

10 governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The

11 Court must dismiss a complaint, or portion thereof, if the prisoner has raised claims that are legally

12 "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek

13 monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2).

14 "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall

15 dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a

16 claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

17      A complaint must contain "a short and plain statement of the claim showing that the pleader

18 is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but

19 "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements,

20 do not suffice," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*,

21 550 U.S. 544, 555 (2007)), and courts "are not required to indulge unwarranted inferences," *Doe I*

22 *v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009). While factual allegations are accepted

23 as true, legal conclusions are not. *Iqbal*, 556 U.S. at 678.

24      While prisoners proceeding pro se in civil rights actions are still entitled to have their

25 pleadings liberally construed and to have any doubt resolved in their favor, the pleading standard is

26 now higher, *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). Under § 1983, plaintiff must

27 demonstrate that each defendant personally participated in the deprivation of his rights. *Jones v.*

28 *Williams*, 297 F.3d 930, 934 (9th Cir. 2002). This requires the presentation of factual allegations

1   sufficient to state a plausible claim for relief. *Iqbal*, 556 U.S. at 678-79; *Moss v. U.S. Secret Service*,

2   572 F.3d 962, 969 (9th Cir. 2009). The mere possibility of misconduct falls short of meeting this

3   plausibility standard. *Iqbal*, 556 U.S. at 678; *Moss*, 572 F.3d at 969.

4       Section 1983 provides a cause of action for the violation of constitutional or other federal

5   rights by those acting under color of state law. *E.g.*, *Patel v. Kent School Dist.*, 648 F.3d 965, 971

6   (9th Cir. 2011); *Jones*, 297 F.3d at 934. For each defendant named, plaintiff must show a causal link

7   between the violation of his rights and an action or omission of the defendant. *Iqbal*, 556 U.S. at

8   678-79; *Starr v. Baca*, 652 F.3d 1202, 1205-06 (9th Cir. 2011); *Corales v. Bennett*, 567 F.3d 554,

9   570 (9th Cir. 2009). There is no respondeat superior liability under § 1983, and each defendant may

10  only be held liable for misconduct directly attributed to him or her. *Iqbal*, 556 U.S. at 676; *Ewing*

11  *v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009).

12                          **IV. Plaintiff's First Amended Complaint**

13                       **A. Named Defendants and Requested Relief**

14      In Plaintiff's first amended complaint, he names I. Bueno, Correctional Sergeant; T. Cano,

15  Appeals Coordinator; R. Chavez, Correctional Counselor II; R. Davis, Chief Deputy Warden (A);

16  A. Diaz, Lieutenant; J. Jones, Appeals Coordinator; M. Junious, Chief Deputy Warden; L. Nelson,

17  Appeals Coordinator / Correctional Counselor II; R. Schneider, Correctional Counselor I, who were

18  all employed at Corcoran State Prison ("CSP"). Plaintiff also names N. Grannis, Chief Inmate

19  Appeals Coordinator for the California Department of Corrections and Rehabilitation ("CDCR").

20  Am. Compl. at 1-3, Doc. 20.

21      For relief, Plaintiff seeks to be free of threats and retaliation and to receive a fair hearing

22  when filing grievances, for the CDCR to conduct an investigation into all misconduct, $100,000 in

23  compensatory damages, $100,000 in exemplary damages, and $200,000 in punitive damages. *Id.* at

24  22.

25               **B. Fourteenth Amendment Due Process Deprivation of Liberty**

26                              **1. Legal Standard**

27      The Due Process Clause protects Plaintiff against the deprivation of liberty without the

28  procedural protections to which he is entitled under the law. *Wilkinson v. Austin*, 545 U.S. 209, 221

1   (2005). To state a claim, Plaintiff must first identify the interest at stake. *Austin*, 545 U.S. at 221.

2   Liberty interests may arise from the Due Process Clause or from state law. *Id.* The Due Process

3   Clause itself does not confer on inmates a liberty interest in avoiding more adverse conditions of

4   confinement, *id.* at 221-22, and under state law, the existence of a liberty interest created by prison

5   regulations is determined by focusing on the nature of the condition of confinement at issue, *id.* at

6   222-23 (citing *Sandin v. Conner*, 515 U.S. 472, 481-84 (1995)). Liberty interests created by prison

7   regulations are generally limited to freedom from restraint which imposes atypical and significant

8   hardship on the inmate in relation to the ordinary incidents of prison life. *Austin*, 545 U.S. at 221

9   (citing *Sandin*, 515 U.S. at 484); *Myron v. Terhune*, 476 F.3d 716, 718 (9th Cir. 2007).

10   **2. Related Allegations**

11   On April 16, 2008, Plaintiff was issued a Rules Violation Report ("RVR") and placed in

12   Administrative Segregation ("ad-seg") at CSP for possession of a deadly weapon (inmate

13   manufactured stabbing instrument). Am. Compl. at 3, 24. On April 25, 2008, Plaintiff appeared

14   before the Institutional Classification Committee ("ICC") for his initial reviewing hearing, and the

15   committee members (Brooks, DaVeiga, Fischer, White, and Giacomi) decided to retain Plaintiff in

16   ad-seg pending adjudication of the RVR for possession of a deadly weapon. *Id.* at 3, 26.

17   On May 23, 2008, Plaintiff had a rules violation hearing, and Senior Hearing Officer

18   ("SHO") defendant Diaz found Plaintiff guilty of the RVR for possession of a weapon. *Id.* at 3, 28.

19   Diaz noted that a metal stabbing weapon sharpened to a point was found in the cell toilet of Plaintiff

20   and his cellmate, inmate Gomez. *Id.* at 29. Gomez issued a statement taking full responsibility for

21   the weapon. *Id.* Defendant Diaz found that Plaintiff failed to establish that he was unaware of the

22   weapon in the toilet, considering the close proximity of the toilet to the bunk and that the toilet is

23   used every day. *Id.* at 30. Diaz noted that Plaintiff's release date is life with the possibility of parole

24   and inmate Gomez's release date is life without the possibility of parole. *Id.* It is the common

25   practice among inmates for the inmate with the longer sentence to take sole responsibility for any

26   weapons found inside a cell. *Id.* Since the discovery of the weapon, there have been no acts of

27   violence between Plaintiff and his cellmate, which led Diaz to believe that both inmates were aware

28   of the weapon in their toilet. *Id.* Diaz also noted that at the time of discovery, the Fresno Bulldogs

were at the peak of ongoing gang violence with Southern Hispanic inmates and were using stabbing weapons to assault each other. *Id.* at 31. Both Plaintiff and his cellmate are members of the Fresno Bulldogs. *Id.* Diaz found that a review of the evidence positively links Plaintiff to the possession of a deadly weapon. *Id.* Plaintiff received a 360 day credit forfeiture and referral to ICC. *Id.* at 28. Plaintiff received a 360 day credit forfeiture and referral to ICC. *Id.* at 28.

On June 26, 2008, Plaintiff appeared before the ICC and they assessed a Security Housing Unit ("SHU") term with a Minimum Eligible Release Date ("MERD") of December 1, 2008. *Id.* at 4, 41.

On December 9, 2008, eight days after Plaintiff's MERD had expired, Plaintiff filed a 602 against all ICC members alleging he was being held illegally without a 114d lock up order, and that it was being done in retaliation for filing a 602 against Diaz. *Id.* at 4-5. On December 15, 2008, defendant Schneider issued Plaintiff the 114d lock up order, after receiving the December 9, 2008 inmate appeal. *Id.*

On December 18, 2008, Plaintiff appeared before the ICC for the first time since his arrival at the SHU on October 1, 2008. *Id.* at 6, 64. The ICC members (defendants R. Davis, R. Chavez, R. Schneider, and I. Bueno) noted that Plaintiff's initial SHU and Pre-MERD review were not completed due to administrative error. *Id.* at 64. The ICC found that Plaintiff met the criteria for an indeterminate SHU based on his disciplinary history. *Id.* The ICC noted that Plaintiff has five (5) prior SHU terms for five (5) RVRs, including three (3) RVRs for battery on an inmate, dated January 24, 2002, February 1, 2003, and May 31, 2003; (1) RVR for possession of a weapon, dated April 16, 2008; and (1) RVR for battery on an inmate with a deadly weapon, dated May 14, 2002. *Id.* The ICC found that releasing Plaintiff to general population at this time may present an immediate threat to the safety and security of self / others as well as the security of the institution. *Id.* Plaintiff advised the ICC that they violated his right to due process by not holding a timely hearing or giving him his 114d lock up order, and that they cannot now assess an indeterminate SHU due to these violations. *Id.* at 6-7. Davis of the ICC told Plaintiff to file a 602 appeal since he has so much practice. *Id.* at 7. Plaintiff interpreted this as retaliatory and a reference to filing 602s against Diaz and the ICC. *Id.* Schneider had the 602 in plain sight that Plaintiff had filed against the ICC on December 9, 2008.

1    *Id.* Plaintiff told the ICC that he would in fact 602 it, and Davis became angry and told Plaintiff that

2    "it doesn't matter cause it will be denied, I'll make sure of that." *Id.* at 8. When Plaintiff exited the

3    ICC room, Schneider handed Plaintiff his 602 from December 9, 2008 and stated "602 us anytime,"

4    and laughed. *Id.* Since Schneider and Davis both made such blatant remarks about Plaintiff's 602

5    and the 602 was in plain sight, all the ICC members had knowledge of the due process violations.

6    *Id.* Issuing Plaintiff an indeterminate SHU term was a conspiracy. *Id.* Plaintiff's additional six month

7    SHU term did not serve a penological goal other than to retaliate against Plaintiff. *Id.*

8                                        **3. Analysis**

9          The Due Process Clause protects Plaintiff against the deprivation of liberty without the

10   procedural protections to which he is entitled under the law. *Wilkinson v. Austin*, 545 U.S. 209, 221

11   (2005). To state a claim, Plaintiff must first identify the interest at stake. *Austin*, 545 U.S. at 221.

12   Liberty interests may arise from the Due Process Clause or from state law. *Id.* The Due Process

13   Clause itself does not confer on inmates a liberty interest in avoiding more adverse conditions of

14   confinement, *id.* at 221-22, and under state law, the existence of a liberty interest created by prison

15   regulations is determined by focusing on the nature of the condition of confinement at issue, *id.* at

16   222-23 (citing *Sandin v. Conner*, 515 U.S. 472, 481-84 (1995)). Liberty interests created by prison

17   regulations are generally limited to freedom from restraint which imposes atypical and significant

18   hardship on the inmate in relation to the ordinary incidents of prison life. *Austin*, 545 U.S. at 221

19   (citing *Sandin*, 515 U.S. at 484); *Myron v. Terhune*, 476 F.3d 716, 718 (9th Cir. 2007).

20         Plaintiff allegations arise, in part, from the adjudication of the RVR on May 23, 2008, finding

21   Plaintiff guilty of possession of an inmate manufactured weapon.

22         As previously stated, the administrative review of Plaintiff's appeal grieving the violation

23   of his rights relating the adjudication of his disciplinary charge provides no basis for liability.

24   *Ramirez*, 334 F.3d at 860; *Mann*, 855 F.2d at 640.

25         Plaintiff's due process claims fail on two grounds. First, Plaintiff was assessed a credit

26   forfeiture as a result of being found guilty of the charge. State prisoners cannot challenge the fact or

27   duration of their confinement in a § 1983 action and their sole remedy lies in habeas corpus relief.

28   *Wilkinson v. Dotson*, 544 U.S. 74, 78 (2005). Known as the favorable termination rule, this exception

1   to § 1983's otherwise broad scope applies whenever state prisoners "seek to invalidate the duration

2   of their confinement - either directly through an injunction compelling speedier release or indirectly

3   through a judicial determination that necessarily implies the unlawfulness of the State's custody."

4   *Dotson*, 544 U.S. at 81. Thus, "a state prisoner's § 1983 action is barred (absent prior invalidation) -

5   no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit

6   (state conduct leading to conviction or internal prison proceedings) - if success in that action would

7   necessarily demonstrate the invalidity of confinement or its duration." *Id.* at 81-82.

8         Plaintiff does not allege that he succeeded in overturning the guilty finding or that his credit

9   loss was otherwise restored. If that is so, Plaintiff is barred from litigating in this action any claim

10  which, if successful, would invalidate the disciplinary finding which led to the credit forfeiture.

11  Within the purview of the favorable termination rule would be any due process challenge to the

12  issuance of the RVR or to the disciplinary hearing, as a finding in Plaintiff's favor would necessarily

13  invalidate the finding of guilt.

14        Second, even if Plaintiff's claim is not barred by the favorable termination rule, his due

15  process claim still fails. Plaintiff has not identified the existence of a protected liberty interest.

16  Plaintiff has not alleged any facts supporting the existence of a liberty interest in remaining free from

17  a SHU term, which precludes him from bringing a due process claim. *Wilkinson*, 545 U.S. at 221;

18  *Sandin*, 515 U.S. at 484; *May v. Baldwin*, 109 F.3d 557, 565 (9th Cir. 1997).

19        Plaintiff does not have a right, as a matter of law, to avoid confinement in administrative or

20  disciplinary segregation and Plaintiff has alleged no facts demonstrating that he was subjected to

21  atypical and significant hardship. *See May v. Baldwin*, 109 F.3d 557, 565 (9th Cir. 1997) (convicted

22  inmate's due process claim fails because he has no liberty interest in freedom from state action taken

23  within sentence imposed and administrative segregation falls within the terms of confinement

24  ordinarily contemplated by a sentence); *Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000)

25  (plaintiff's placement and retention in the SHU was within range of confinement normally expected

26  by inmates in relation to ordinary incidents of prison life and, therefore, plaintiff had no protected

27  liberty interest in being free from confinement in the SHU). Allegations of an eight month SHU term

28  and loss of property do not implicate a protected interest, and the absence of an identifiable interest

1  precludes the finding of a viable due process claim. *Austin*, 545 U.S. at 221.

2      Furthermore, Plaintiff has not shown that he was denied the minimal protections he was due

3  under federal law. *Wolff v. McDonnell*, 418 U.S. 539, 563-71 (1974); *Walker v. Sumner*, 14 F.3d

4  1415, 1420 (9th Cir. 1994), *abrogated on other grounds by Sandin*, 515 U.S. 472.

5      Assuming Plaintiff is able to allege facts sufficient to show he was deprived of a protected

6  liberty interest, Plaintiff must demonstrate that he was denied the limited procedural protections he

7  was due under federal law.  With respect to prison disciplinary proceedings, the minimum procedural

8  requirements that must be met are:  (1) written notice of the charges; (2) at least 24 hours between

9  the time the prisoner receives written notice and the time of the hearing, so that the prisoner may

10 prepare his defense; (3) a written statement by the fact finders of the evidence they rely on and

11 reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses in his defense,

12 when permitting him to do so would not be unduly hazardous to institutional safety or correctional

13 goals; and (5) legal assistance to the prisoner where the prisoner is illiterate or the issues presented

14 are legally complex. *Wolff v. McDonnell*, 418 U.S. 539, 563-71 (1974). As long as the five minimum

15 *Wolff* requirements are met, due process has been satisfied. *Walker v. Sumner*, 14 F.3d 1415, 1420

16 (9th Cir. 1994).

17     In Plaintiff's amended complaint, he contends that he did not receive the 114d lock up order,

18 an initial SHU review, or a pre-MERD hearing. However, on April 16, 2008, Plaintiff received the

19 initial RVR, charging him with possession of a weapon and the placement notice into ad-seg. On

20 April 25, 2008, Plaintiff appeared before the ICC for his initial reviewing hearing, and on May 23,

21 2008, Plaintiff had an RVR hearing. On October 1, 2008, Plaintiff was transferred to the SHU, and

22 on December 18, 2008, Plaintiff appeared before the ICC for a review hearing. It appears Plaintiff

23 had notice of all of the above-named hearings and an opportunity to be heard.

24     The Constitution requires only that there be "some evidence" to support the conviction and

25 the standard is not stringent. *Superintendent v. Hill*, 472 U.S. 445, 455 (1985). Here, Plaintiff's

26 allegations that an inmate manufactured weapon was found in his cell indicate there was some

27 *minimal* evidence supporting the finding of guilt, and Plaintiff's disagreement with hearing officer's

28 weight and credibility assessments will not support a federal claim. *Id.* Accordingly, the Court finds

that Plaintiff's challenge of the decision by the hearing officer, finding Plaintiff guilty of the RVR for possession of an inmate manufactured weapon, and Plaintiff's subsequent SHU term fails to state a cognizable § 1983 due process claim.

## C. First Amendment Retaliation and Linkage

### 1. Legal Standard

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985); *see also Valandingham v. Bojorquez*, 866 F.2d 1135 (9th Cir. 1989); *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal. *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005); *accord Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009).

Under § 1983, Plaintiff must link the named defendants to the participation in the violation at issue. *Iqbal*, 556 U.S. at 678-79; *Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1020-21 (9th Cir. 2010); *Ewing*, 588 F.3d at 1235; *Jones v. Williams*, 297 F.3d at 934. Liability may not be imposed on supervisory personnel under the theory of respondeat superior, *Iqbal*, 556 U.S. at 676; *Ewing*, 588 F.3d at 1235, and administrators may only be held liable if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them," *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *accord Starr*, 652 F.3d 1202, 1205-08 (9th Cir. 2011); *Corales*, 567 F.3d at 570; *Preschooler II v. Clark County School Board of Trustees*, 479 F.3d 1175, 1182 (9th Cir. 2007); *Harris v. Roderick*, 126 F.3d 1189, 1204 (9th Cir. 1997). Some culpable action or inaction must be attributable to defendants and while the creation or enforcement of, or acquiescence in, an unconstitutional policy may support a claim, the policy must have been the moving force behind the violation. *Starr*, 652 F.3d at 1205; *Jeffers v. Gomez*, 267 F.3d 895, 914-15 (9th Cir. 2001); *Redman v. County of San Diego*, 942 F.2d 1435, 1446-47 (9th Cir. 1991); *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989).

## 2. Retaliation as to Defendant Diaz

### a. Retaliation Allegations Related to Diaz

On October 1, 2008, Plaintiff and his cellmate, inmate Gomez, were placed in a holding cages along with other inmates to be processed for transfer to the SHU. *Id.* at 4. Plaintiff and Gomez noticed that the other inmates' property was being processed for transfer, but the property of Plaintiff and Gomez was not being processed and was not even present. *Id.* Plaintiff asked defendant Diaz the location of their property and questioned why their property was not being processed and was not even present. *Id.* Diaz responded that "your property will be sent to you when you stop crying, start acting like a convict" and that Plaintiff "shouldn't be filing 602s and lying about people." *Id.* Plaintiff interpreted this as a threat, resulting from Plaintiff filing a 602 against Diaz. *Id.* Plaintiff states that SHU inmates are allowed legal materials and hygiene and food items, and that all other property is shipped to relatives at the inmate's expense, disposed of, or donated. *Id.* Plaintiff states that CSP does not warehouse SHU inmates' property. *Id.* at 4-5.

On May 25, 2009, Plaintiff filed a 602 against CSP staff, alleging deprivation of his personal property since his arrival at the SHU. *Id.* at 13. Plaintiff believes that his property was denied to him in retaliation for all the 602s he filed and for his prior lawsuit against SVSP. *Id.* On June 9, 2009, Plaintiff was transferred to SVSP with his SHU property. *Id.* Correctional Officer Murrieta advised that Plaintiff's ad-seg property would be forwarded to Plaintiff in three to four weeks. *Id.* On July 9, 2009, Plaintiff filed another 602 regarding his personal property not being issued to him from CSP. *Id.* at 15. On October 5, 2009, Plaintiff finally received his personal property from CSP, only after he brought the matter to the attention of his psychologist, Burkhardt. *Id.* at 15-16.

Plaintiff alleges that Defendant Diaz retaliated against Plaintiff by depriving him of personal property from October 1, 2008 through October 5, 2009 without due process or equal protection. *Id.* at 19-20.

### b. Retaliation Analysis as to Diaz

Plaintiff fails to state a claim for retaliation against defendant Diaz. Plaintiff states that Diaz withheld Plaintiff's property in retaliation for filing a grievance, but Plaintiff does not allege that Diaz was the actual person exercising custody or control over Plaintiff's property. Plaintiff fails to

link Diaz as the one responsible for depriving him of property, pursuant to *Iqbal*, 556 U.S. at 678-79; *Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1020-21; *Ewing*, 588 F.3d at 1235; and *Jones*, 297 F.3d at 934. Plaintiff filed several grievances for return of his property but did not allege Diaz was the person responsible for holding Plaintiff's property. In addition, Plaintiff states that SHU inmates are only allowed legal materials and hygiene and food items, and that all other property is shipped to relatives at the inmate's expense, disposed of, or donated. Plaintiff states that CSP does not warehouse SHU inmates' property. Thus, Plaintiff's own allegations contradict his assertion that he was denied property while in the SHU. Moreover, it appears Plaintiff was able to have his property transferred to him in the end, as opposed to having it shipped to relatives or disposed of, as he alleged is the common practice at CSP. Plaintiff alleges that he "interpreted" the statements by Diaz as a threat. However, Plaintiff's "interpretation" is merely conclusory and fails to show that Diaz actually intended his statement to be a threat. Finally, the temporary separation of Plaintiff from his personal property while in the SHU would reasonably advance a legitimate correctional goal of safety and security of the institution. Therefore, Plaintiff fails to state a cognizable § 1983 First Amendment retaliation claim against defendant Diaz.

### 3. Retaliation as to ICC member defendants Davis, Chavez, Schneider, and Bueno

#### a. Retaliation Allegations Related to Davis, Chavez, Schneider, and Bueno

On April 16, 2008, Plaintiff was issued an RVR and placed in ad-seg at CSP for possession of a deadly weapon (inmate manufactured stabbing instrument). Am. Compl. at 3, 24. On April 25, 2008, Plaintiff appeared before the ICC for his initial reviewing hearing, and the committee members (Brooks, DaVeiga, Fischer, White, and Giacomi) decided to retain Plaintiff in ad-seg pending adjudication of the RVR for possession of a deadly weapon. *Id.* at 3, 26. On June 26, 2008, Plaintiff appeared before the ICC and they assessed a SHU term with a MERD of December 1, 2008. *Id.* at 4, 41. On October 1, 2008, Plaintiff was transferred to the SHU. *Id.* at 4.

On December 9, 2008, eight days after Plaintiff's MERD had expired, Plaintiff filed a 602 against all ICC members alleging he was being held illegally without a 114d lock up order, and that it was being done in retaliation for filing a 602 against Diaz. *Id.* at 4-5. On December 15, 2008, defendant Schneider issued Plaintiff the 114d lock up order, after receiving the December 9, 2008

1   inmate appeal. *Id.* Plaintiff told Schneider that his rights were being violated by the ICC. *Id.*

2   Schneider responded that "you shouldn't have been crying so much." *Id.* at 5-6. Plaintiff interpreted

3   this to mean he should not have filed the first inmate appeal against Diaz on June 17, 2008, or the

4   second inmate appeal against the ICC (which included Schneider) on December 9, 2008. *Id.* at 6.

5           On December 18, 2008, Plaintiff appeared before the ICC for the first time since his arrival

6   at the SHU on October 1, 2008. *Id.* at 6, 64. The ICC member defendants Davis, Chavez, Schneider,

7   and Bueno noted that Plaintiff's initial SHU and Pre-MERD review were not completed due to

8   administrative error. *Id.* at 64. The ICC found that Plaintiff met the criteria for an indeterminate SHU

9   based on his disciplinary history. *Id.* The ICC noted that Plaintiff has five (5) prior SHU terms for

10  five (5) RVRs, including three (3) RVRs for battery on an inmate, dated January 24, 2002, February

11  1, 2003, and May 31, 2003; (1) RVR for possession of a weapon, dated April 16, 2008; and (1) RVR

12  for battery on an inmate with a deadly weapon, dated May 14, 2002. *Id.* The ICC found that releasing

13  Plaintiff to general population at this time may present an immediate threat to the safety and security

14  of self / others as well as the security of the institution. *Id.* Plaintiff advised the ICC that they

15  violated his right to due process by not holding a timely hearing or giving him his 114d lock up

16  order, and that they cannot now assess an indeterminate SHU due to these violations. *Id.* at 6-7.

17  Davis of the ICC told Plaintiff to file a 602 appeal since he has so much practice. *Id.* at 7. Plaintiff

18  interpreted this as retaliatory and a reference to filing 602s against Diaz and the ICC. *Id.* Schneider

19  had the 602 in plain sight that Plaintiff had filed against the ICC on December 9, 2008. *Id.* Plaintiff

20  told the ICC that he would in fact 602 it, and Davis became angry and told Plaintiff that "it doesn't

21  matter cause it will be denied, I'll make sure of that." *Id.* at 8. When Plaintiff exited the ICC room,

22  Schneider handed Plaintiff his 602 from December 9, 2008 and stated "602 us anytime," and

23  laughed. *Id.* Since Schneider and Davis both made such blatant remarks about Plaintiff's 602 and

24  the 602 was in plain sight, all the ICC members had knowledge of the due process violations. *Id.*

25  Issuing Plaintiff an indeterminate SHU term was a conspiracy. *Id.* Plaintiff's additional six month

26  SHU term did not serve a penological goal other than to retaliate against Plaintiff. *Id.* On December

27  30, 2008, Plaintiff filed another 602 against the ICC for actions taken on December 18, 2008 and for

28  the continued violations. *Id.*

1    On February 25, 2009, defendant Chavez interviewed Plaintiff regarding his first 602 against

2    the ICC from December 9, 2008. *Id.* During the interview, Plaintiff tried to advise Chavez of the ICC

3    violations, but Chavez laughed and said, "are you serious? I'm just here to make sure you understand

4    you're not at Salinas anymore." *Id.* This was referring to Salinas Valley State Prison ("SVSP"),

5    where Plaintiff filed his previous lawsuit against staff. *Id.* Plaintiff interpreted this as a threat, and

6    that CSP would not tolerate Plaintiff filing 602s. *Id.* Plaintiff now believes the prior lawsuit was one

7    of motives behind the retaliation by defendants, apart from the 602s he filed against Diaz and the

8    ICC. *Id.* at 11.

9    On May 14, 2009, Plaintiff appeared before the ICC for his 180 day CDCR annual review

10   hearing, with defendant Davis serving as chairperson. *Id.* at 99. The ICC found Plaintiff eligible for

11   release from the SHU and approved Plaintiff's request to transfer to SVSP based on family location.

12   *Id.* On June 9, 2009, Plaintiff was transferred to SVSP. *Id.* at 13.

13   On June 25, 2009, defendant Grannis denied Plaintiff's December 9, 2008 inmate appeal

14   against the ICC. *Id.* at 14. In the decision by Grannis, he noted that on June 26, 2008, Plaintiff had

15   a hearing with ICC, and that they imposed a ten month SHU term. *Id.* at 43. On December 18, 2008,

16   the ICC found Plaintiff met the criteria for an indeterminate SHU based on his disciplinary history

17   of five (5) prior SHU terms for five (5) RVRs. *Id.* at 43. Grannis noted that the institution failed to

18   schedule an initial SHU review or a pre-MERD hearing, but that Plaintiff suffered no adverse harm

19   due to the ICC review and the indeterminate SHU term. *Id.* at 44.

20   **b.  Retaliation Analysis as to Davis, Chavez, Schneider, and Bueno**

21   Plaintiff fails to state a claim for retaliation against ICC member defendants Davis, Chavez,

22   Schneider, and Bueno.

23   Plaintiff alleges he did not receive a 114d lock up order, an initial SHU hearing, a pre-MERD

24   hearing, and that he was held in the SHU in retaliation for filing grievances against Diaz and the

25   ICC. On April 16, 2008, Plaintiff was issued an RVR and placed in ad-seg at CSP for possession of

26   a deadly weapon (inmate manufactured stabbing instrument). On April 25, 2008, the ICC decided

27   to retain Plaintiff in ad-seg pending adjudication of the RVR for possession of a deadly weapon. On

28   June 26, 2008, the ICC issued Plaintiff a ten month SHU term with a MERD of December 1, 2008.

However, it appears that Plaintiff was not transferred to the SHU until October 1, 2008. Plaintiff served two and one-half months in the SHU before the ICC hearing on December 18, 2008. On June 9, 2009, the ICC, with Davis serving as chairperson, approved Plaintiff's transfer from the SHU to SVSP, based on family location. Therefore, Plaintiff served a total of eight months in the SHU from October 1, 2008 through June 9, 2009. The remainder of his time was spent in ad-seg, due to the guilty finding for the RVR for possession of a weapon from April 16, 2008. Thus, the Court does not find that defendant ICC members took the alleged adverse action of extending his SHU, when Plaintiff only served eight months of a ten month term. Moreover, the ICC member defendants noted that Plaintiff's initial SHU and Pre-MERD review were not completed due to administrative error. In addition, Grannis noted that the institution failed to schedule an initial SHU review or a pre-MERD hearing, but that Plaintiff suffered no adverse harm due to the ICC review and the indeterminate SHU term. Thus, the Court finds that Plaintiff failed to establish that not receiving a 114d lock up order, an initial SHU hearing, or a pre-MERD hearing constituted an adverse action against him.

As to Plaintiff's allegations of the ICC's assessment of an indeterminate SHU, the ICC found that Plaintiff met the criteria for an indeterminate SHU based on his disciplinary history. The ICC noted that Plaintiff has five (5) prior SHU terms for five (5) RVRs, including three (3) RVRs for battery on an inmate; (1) RVR for possession of a weapon; and (1) RVR for battery on an inmate with a deadly weapon. The ICC found that releasing Plaintiff to general population at this time may present an immediate threat to the safety and security of self / others as well as the security of the institution. Thus, Plaintiff fails to establish that the assessment of an indeterminate SHU did not reasonably advance a legitimate correctional goal. "The district court properly dismissed [plaintiff's] retaliation claim because he failed to allege that his transfer and placement in administrative segregation did not serve a legitimate penological goal. *See Rizzo*, 778 F.2d at 532." *Beagles v. Miller-Stout*, 47 Fed. Appx. 832 (9th Cir. 2002). *See also Del Rio v. Schwarzenegger*, 2010 WL 347888, at *7 (C.D. Cal. Jan. 20, 2010) (citing *Rhodes*, 408 F.3d at 567-68).

Plaintiff alleges that he "interpreted" the statements by Davis, Chavez, and Schneider as threats. However, Plaintiff's "interpretation" is merely conclusory and fails to show that defendants

actually intended their statements to be threats.

Therefore, Plaintiff fails to state a cognizable § 1983 First Amendment retaliation claim against ICC member defendants Davis, Chavez, Schneider, and Bueno.

**4. Retaliation as to Appeals Process defendants Nelson, Cano, Jones, Junious, and Grannis**

**a. Retaliation Allegations Related to Nelson, Cano, Jones, Junious, and Grannis**

On July 31, 2008, defendant Chief Deputy Warden Junious denied Plaintiff's inmate appeal at the second level of review. Am. Compl. at 35-36. In his decision, Junious found that this was a case of "constructive possession" of a weapon by both cellmates. *Id.* The guilty finding by the Diaz was reasonable because both cellmates would have knowledge of the weapon in the cell's one and only toilet. *Id.* at 36. Junious also found that Diaz did not discriminate against Plaintiff for being a member of the Fresno Bulldogs but only noted that the weapon was discovered at the peak of ongoing gang violence with the Southern Hispanic inmates. *Id.*

On December 29, 2008, defendant Nelson screened out Plaintiff's December 9, 2008 appeal against the ICC, requesting the 128G from the last ICC on December 18, 2008. *Id.* at 9.

On December 30, 2008, defendant Grannis denied Plaintiff's June 17, 2008 inmate appeal against Diaz at the director's level of review. *Id.* at 33-34. In his decision, Grannis found that Diaz did not have a predetermined belief against Plaintiff for being a member of the Fresno Bulldogs but only noted that the weapon was discovered at the peak of ongoing gang violence with the Southern Hispanic inmates. *Id.* at 34.

On January 5, 2009, Plaintiff responded to Nelson's screen out, stating that December 9, 2008 appeal against the ICC was filed prior to the actions taken on December 18, 2008, so the 128G was not relevant, and that Plaintiff did not have the 128G because Schneider did not give it to him. *Id.*

On March 9, 2009, defendant Jones screened out Plaintiff's second 602 against the ICC, stating it was duplicative of Plaintiff's first 602 against the ICC. *Id.* Defendants Jones, Nelson, and Cano constantly screen out Plaintiff's 602s for no penological goal other than to dissuade Plaintiff from pursuing his appeals and to retaliate against him for filing 602s against Diaz and the ICC. *Id.* at 12. This proves that all defendants conspired to retaliate against Plaintiff. *Id.* Defendant Jones

1    illegally denied Plaintiff's 602 as duplicative of the appeal filed by his cellmate, inmate Gomez, who

2    experienced all of the same retaliation. *Id.* at 13.

3         On June 25, 2009, defendant Grannis denied Plaintiff's December 9, 2008 inmate appeal

4    against the ICC. *Id.* at 14. Grannis was also a defendant in Plaintiff's prior lawsuit and is believed

5    to be biased towards Plaintiff. *Id.* In the decision by Grannis, he noted that on June 26, 2008,

6    Plaintiff had a hearing with ICC, and that they imposed a ten month SHU term. *Id.* at 43. On

7    December 18, 2008, the ICC found Plaintiff met the criteria for an indeterminate SHU based on his

8    disciplinary history of five (5) prior SHU terms for five (5) RVRs. *Id.* at 43. Grannis noted that the

9    institution failed to schedule an initial SHU review or a pre-MERD hearing, but that Plaintiff

10   suffered no adverse harm due to the ICC review and the indeterminate SHU term. *Id.* at 44.

11        On November 20, 2009, defendant Cano screened out Plaintiff's July 9, 2009 inmate appeal

12   regarding his property, due to time constraints. *Id.* at 16. On December 8, 2009, Plaintiff responded

13   to the screen out, stating that he received his property but was still missing seventeen books. *Id.* at

14   17.On February 9, 2010, Plaintiff responded to another screen-out by Cano, and in Plaintiff's appeal,

15   he stated that he did not care about the missing books, he only wanted a response to his appeal. *Id.*

16        Plaintiff alleges defendants Nelson, Cano, Jones, Chief Deputy Warden Junious, and Grannis

17   conspired to retaliate against Plaintiff and violate his right to petition the government to file a

18   grievance and access to courts by falsely denied his appeals due to time restraints or as duplicative,

19   thus preventing Plaintiff from exhausting his administrative remedies. *Id.* at 21.

20              **b.  Retaliation Analysis as to Nelson, Cano, Jones, Junious, and Grannis**

21        Plaintiff's conclusory allegations fails to state a claim for retaliation as to Appeals Process

22   defendants Nelson, Cano, Jones, Junious, and Grannis. Plaintiff submits no actual facts to support

23   his conclusory allegations that the Appeals Process defendants were motivated by retaliation in

24   denying or screening his appeals. The record demonstrates that the Appeals Process defendants

25   articulated a legitimate reason and analysis for each of the denials and screenings, which would

26   reasonably advance a legitimate correctional goal. Therefore, Plaintiff fails to state a cognizable §

27   1983 First Amendment retaliation claim against Appeals Process defendants Nelson, Cano, Jones,

28   Junious, and Grannis.

**D. Equal Protection / Discrimination**

**1. Legal Standard**

The Equal Protection Clause requires that persons who are similarly situated be treated alike. *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985). An equal protection claim may be established in two ways. First, a plaintiff establishes an equal protection claim by showing that the defendant has intentionally discriminated on the basis of the plaintiff's membership in a protected class. *See e.g., Comm. Concerning Cmty. Improvement v. City of Modesto*, 583 F.3d 690, 702–03 (9th Cir. 2009); *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003), *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001). Under this theory of equal protection, the plaintiff must show that the defendant's actions were a result of the plaintiff's membership in a suspect class, such as race. *Thornton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005).

If the action in question does not involve a suspect classification, a plaintiff may establish an equal protection claim by showing that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose. *Engquist v. Oregon Department of Agriculture*, 553 U.S. 591, 601-02 (2008); *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (coining the term "class of one"); *Gonzalez-Medina v. Holder*, 641 F.3d 333, 336 (9th Cir. 2011); *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008); *North Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008). To state a claim as a class of one, a plaintiff must articulate who he is similarly situated to and how they are similar in order for disparate treatment to equate to a violation of his rights to equal protection. See *McCollum v. California Dept. of Corrections and Rehabilitation*, 647 F.3d 870, 880–81 (9th Cir. 2011), citing *Flores v. Morgan Hill Unified Sch. Dist.*, 324 F.3d 1130, 1134 (9th Cir. 2003).

**2. Related Allegations**

On May 23, 2008, Plaintiff had a rules violation hearing, and defendant Diaz found Plaintiff guilty of the RVR for possession of a weapon. Am. Compl. at 3, 28. Diaz noted that a metal stabbing weapon sharpened to a point was found in the cell toilet of Plaintiff and his cellmate, inmate Gomez. *Id.* at 29. Gomez issued a statement taking full responsibility for the weapon. *Id.* Defendant Diaz found that Plaintiff failed to establish that he was unaware of the weapon in the toilet, considering

the close proximity of the toilet to the bunk and that the toilet is used every day. *Id.* at 30. Diaz noted that Plaintiff's release date is life with the possibility of parole and inmate Gomez's release date is life without the possibility of parole. *Id.* It is the common practice among inmates for the inmate with the longer sentence to take sole responsibility for any weapons found inside a cell. *Id.* Since the discovery of the weapon, there have been no acts of violence between Plaintiff and his cellmate, which led Diaz to believe that both inmates were aware of the weapon in their toilet. *Id.* Diaz also noted that at the time of discovery, the Fresno Bulldogs were at the peak of ongoing gang violence with Southern Hispanic inmates and were using stabbing weapons to assault each other. *Id.* at 31. Both Plaintiff and his cellmate are members of the Fresno Bulldogs. *Id.* Diaz found that a review of the evidence positively links Plaintiff to the possession of a deadly weapon. *Id.* Plaintiff received a 360 day credit forfeiture and referral to ICC. *Id.* at 28.

On June 17, 2008, Plaintiff filed a 602 inmate appeal, challenging the guilty verdict by Diaz; questioning Diaz's ability to give a fair and impartial hearing; and alleging discrimination against Plaintiff, due to Plaintiff's gang affiliation with the Fresno Bulldogs. *Id.* at 3-4.

On July 31, 2008, defendant Chief Deputy Warden Junious denied Plaintiff's inmate appeal at the second level of review. *Id.* at 35-36. In his decision, Junious found that this was a case of "constructive possession" of a weapon by both cellmates. *Id.* The guilty finding by the Diaz was reasonable because both cellmates would have knowledge of the weapon in the cell's one and only toilet. *Id.* at 36. Junious also found that Diaz did not discriminate against Plaintiff for being a member of the Fresno Bulldogs but only noted that the weapon was discovered at the peak of ongoing gang violence with the Southern Hispanic inmates. *Id.*

On October 1, 2008, Plaintiff and his cellmate, inmate Gomez, were placed in a holding cages along with other inmates to be processed for transfer to the SHU. *Id.* at 4. Plaintiff and Gomez noticed that the other inmates' property was being processed for transfer, but the property of Plaintiff and Gomez was not being processed and was not even present. *Id.* Plaintiff asked defendant Diaz the location of their property and questioned why their property was not being processed and was not even present. *Id.* Diaz responded that "your property will be sent to you when you stop crying, start acting like a convict" and that Plaintiff "shouldn't be filing 602s and lying about people." *Id.*

1  Plaintiff interpreted this as a threat, resulting from Plaintiff filing a 602 against Diaz. *Id.* Plaintiff
2  states that SHU inmates are allowed legal materials and hygiene and food items, and that all other
3  property is shipped to relatives at the inmate's expense, disposed of, or donated. *Id.* Plaintiff states
4  that CSP does not warehouse SHU inmates' property. *Id.* at 4-5.

5  On December 30, 2008, defendant Grannis denied Plaintiff's June 17, 2008 inmate appeal
6  against Diaz at the director's level of review. *Id.* at 33-34. In his decision, Grannis found that Diaz
7  did not have a predetermined belief against Plaintiff for being a member of the Fresno Bulldogs but
8  only noted that the weapon was discovered at the peak of ongoing gang violence with the Southern
9  Hispanic inmates. *Id.* at 34.

10  Plaintiff alleges Defendant Diaz retaliated against Plaintiff by depriving him of personal
11  property from October 1, 2008 through October 5, 2009 without due process or equal protection. *Id.*
12  at 19-20.

13  Plaintiff alleges ICC member defendants Davis, Chavez, Schneider, and Bueno conspired
14  to retaliate and violate Plaintiff's rights to due process, equal protection, and access to courts. *Id.*

15  **3. Analysis**

16  Plaintiff fails to state a claim against any defendants. Plaintiff has not alleged sufficient facts
17  which indicate that defendants treated him differently on the basis of a protected class. Plaintiff
18  alleges defendant Diaz discriminated against him as a gang member of the Fresno Bulldogs.
19  Plaintiffs allegations do not show that he was a member of a protected class so as to state a
20  cognizable traditional, discriminatory equal protection claim against defendant Diaz. Plaintiff's
21  allegations against Diaz also do not show that he treated him any differently from other similarly
22  situated individuals. It appears that Plaintiff is attempting to state an equal protection claim against
23  defendants by claiming to have received disparate treatment from others similarly situated, i.e. that
24  he qualifies as a class of one. *Rodriguez v. Isaac*, 2011 WL 4971865, at *9 (E.D. Cal. Oct. 19, 2011).

25  Plaintiff alleges Diaz discriminated against him as a gang member of the Fresno Bulldogs.
26  However, a review of Diaz's decision that he was only noting the probable reason for finding a
27  stabbing weapon in the cell of two Fresno Bulldog gang members during the height of violence with
28  Southern Hispanic inmates. As to Plaintiff's allegations of deprivation of property in violation of

equal protection, as stated above, Plaintiff did not allege that Diaz was the actual person exercising custody or control over Plaintiff's property. Plaintiff fails to link Diaz as the one responsible for depriving him of property, pursuant to *Iqbal*, 556 U.S. at 678-79; *Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1020-21; *Ewing*, 588 F.3d at 1235; and *Jones*, 297 F.3d at 934. In addition, Plaintiff does not make any allegations that Diaz referenced Plaintiff's gang membership when discussing his property. Thus, Plaintiff's allegations of deprivation of property in violation of equal protection were merely conclusory. As to the ICC member defendants Davis, Chavez, Schneider, and Bueno, Plaintiff submits no actual facts to support his conclusory allegations that they were motivated by a discriminatory purpose. Therefore, Plaintiff fails to state a cognizable § 1983 Equal Protection claim against defendants.

### E. Fourteenth Amendment Due Process Deprivation of Property

Plaintiff alleges that the temporary separation from his personal property while he was in the SHU for eight months violated his right to due process.

Although "States may under certain circumstances create liberty interests which are protected by the Due Process Clause," those circumstances are generally limited to freedom from restraint that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995). Here, the temporary deprivation of personal property does not impose an atypical or significant hardship in relation to the ordinary incidents of prison life.

Plaintiff's temporary separation from his personal property while he was in the SHU for eight months does not support a due process claim. *See Barnett v. Centoni*, 31 F.3d 813, 816-17 (9th Cir. 1994); *Cummer v. Tilton*, 2010 WL 2606502, at *5 (E.D. Cal. 2010); *Owens v. Ayers*, 2002 WL 73226, at *2 (N.D. Cal. 2002).

> Another regulation requires that any personal items must "present no threat to institution security or the safety of persons" and limits the volume of property for an inmate to a maximum of six cubic feet, Cal. Code Reg. tit. 15, § 3190. Prison Procedure apparently further restricts the possession of property by any inmate in administrative segregation. A California inmate would not have a legitimate claim of entitlement to possess personal property in prison unless explicitly authorized by other state laws or prison regulations—but Plaintiff has not identified any such laws or regulations. Plaintiff did not have a

right to due process before he could be temporarily deprived of property that was not permitted in the housing unit in which he was kept. He also had no legitimate claim of entitlement to his proposed alternative accommodation (i.e., that he be kept in the general population with extra security precautions) so that he would not be subjected to the property possession regulations that applied to all inmates housed in administrative segregation. *Cf. Meachum v. Fano*, 427 U.S. 215, 225) (1976) (no constitutionally-protected right to housing in a particular prison).

*See Owens v. Ayers*, 2002 WL 73226, at *2 (N.D. Cal. Jan. 15, 2002). Accordingly, the Court finds that Plaintiff's temporary separation from his personal property while he was in the SHU for eight months fails to state a cognizable § 1983 due process claim.

### F. Violation of State Prison Rules and Regulations

Violations of state prison rules and regulations, without more, do not support any claims under § 1983. *Ove v. Gwinn*, 264 F.3d 817, 824 (9th Cir. 2001); *Sweaney v. Ada County, Idaho*, 119 F.3d 1385, 1391 (9th Cir. 1997). Only if the events complained of rise to the level of a federal statutory or constitutional violation may Plaintiff pursue them under section 1983. *Patel*, 648 F.3d at 971; *Jones*, 297 F.3d at 934. Thus, complaints that prison officials violated state regulations regarding the inmate appeals process or prison disciplinary proceedings, for example, will not support a claim for denial of due process under federal law.

### G. False Reports

To the extent that Plaintiff attempts to allege a liberty interest regarding the submission of false reports against him, he fails to state a cognizable claim for relief. The Due Process Clause itself does not contain any language that grants a broad right to be free from false accusations, but guarantees certain procedural protections to defend against false accusations. *Freeman v. Rideout*, 808 F.2d 949, 951 (2nd Cir. 1986). However, "prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Accordingly, the Court finds that Plaintiff fails to state a cognizable claim for relief under § 1983 based upon false reports.

//

//

**H. Inmate Appeals Process**

1

2          Plaintiff alleges that defendants Nelson, Cano, Jones, Chief Deputy Warden Junious, and

3   Grannis conspired to retaliate against Plaintiff and violate his right to petition the government to file

4   a grievance by falsely denied his appeals due to time restraints or as duplicative, thus preventing

5   Plaintiff from exhausting his administrative remedies. Am. Compl. at 21.

6          Defendants' actions in responding to Plaintiff's appeals, alone, cannot give rise to any claims

7   for relief under section 1983 for violation of due process. "[A prison] grievance procedure is a

8   procedural right only, it does not confer any substantive right upon the inmates." *Buckley v. Barlow*,

9   997 F.2d 494, 495 (8th Cir. 1993) (citing *Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982));

10  *see also Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of

11  appeals because no entitlement to a specific grievance procedure); *Massey v. Helman*, 259 F.3d 641,

12  647 (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on prisoner); *Mann*

13  *v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988). "Hence, it does not give rise to a protected liberty

14  interest requiring the procedural protections envisioned by the Fourteenth Amendment." *Azeez*, 568

15  F. Supp. at 10; *Spencer v. Moore*, 638 F. Supp. 315, 316 (E.D. Mo. 1986). Actions in reviewing a

16  prisoner's administrative appeal cannot serve as the basis for liability under § 1983. *Buckley*, 997

17  F.2d at 495. Accordingly, the Court finds that Plaintiff fails to state a cognizable claim for relief

18  under § 1983 based upon the inmate appeals process.

19                              **I. First Amendment Right of Access to Courts**

20         Plaintiff alleges that defendants Nelson, Cano, Jones, Junious, and Grannis conspired to

21  retaliate against Plaintiff and violate his right to access to courts by falsely denied his appeals. Am.

22  Compl. at 21.

23         Inmates have a fundamental constitutional right of access to the courts. *Lewis v. Casey*, 518

24  U.S. 343, 346 (1996); *Silva v. Di Vittorio*, 658 F.3d 1090, 1101-02 (9th Cir. 2011). The right of

25  access to the courts is merely the right to bring to court a grievance the inmate wishes to present, and

26  is limited to direct criminal appeals, habeas petitions, and civil rights actions. *Lewis*, 518 U.S. at 354.

27  To bring a claim, a prisoner must have suffered an actual injury by being shut out of court.

28  *Christopher v. Harbury,* 536 U.S. 403, 415 (2002); *Lewis*, 518 U.S. at 351; *Phillips v. Hust*, 588

F.3d 652, 655 (9th Cir. 2009).

Plaintiff fails to state a claim against any defendants for First Amendment right to access the courts. Plaintiff has not alleged sufficient facts which indicate that Plaintiff suffered an actual injury by being shut out of court.

### J. Conspiracy

A conspiracy claim brought under § 1983 requires proof of "'an agreement or meeting of the minds to violate constitutional rights,'" *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2001) (quoting *United Steel Workers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540-41 (9th Cir. 1989) (citation omitted)), and an actual deprivation of constitutional rights, *Hart v. Parks*, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting *Woodrum v. Woodward County, Oklahoma*, 866 F.2d 1121, 1126 (9th Cir. 1989)). "'To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.'" *Franklin*, 312 F.3d at 441 (quoting *United Steel Workers*, 865 F.2d at 1541).

The federal system is one of notice pleading, and the court may not apply a heightened pleading standard to plaintiff's allegations of conspiracy. *Empress LLC v. City and County of San Francisco*, 419 F.3d 1052, 1056 (9th Cir. 2005); *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1126 (2002). However, although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff must set forth "the grounds of his entitlement to relief[,]" which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . ." *Id.*

Plaintiff alleges conspiracy, but Plaintiff does not make any specific allegations regarding the conspiracy or the parties to the conspiracy. Therefore, his allegation is conclusory and there are no specific facts supporting the existence of a conspiracy. *Avalos v. Baca*, 596 F.3d 583, 592 (9th Cir. 2010); *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2001). As such, a bare allegation that Defendants conspired to violate Plaintiff's constitutional rights will not suffice to give rise to a conspiracy claim under § 1983.

//

**V. Conclusion**

Plaintiff's amended complaint fails to state any claims upon which relief may be granted. Plaintiff was previously notified of the deficiencies in his claims and granted leave to amend, but he was unable to cure the deficiencies. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000); *Noll v. Carlson*, 809 F.2d 1446, 1448-49 (9th Cir. 1987). Based on the record in this case, the Court finds that further leave to amend is not warranted.

Based on the foregoing, it is HEREBY ORDERED that:

1.      Plaintiff's motion for reconsideration of the Court's order dismissing this action, with prejudice is DENIED;

2.      Plaintiff's amended complaint fails to state any claims upon which relief may be granted; and

3.      Pursuant to 28 U.S.C. §§ 1915A and 1915(e), the Court HEREBY FINDS that this action was properly DISMISSED, with prejudice, based on Plaintiff's failure to state any claims upon which relief may be granted under § 1983.

IT IS SO ORDERED.

Dated:      August 23, 2012

_____
UNITED STATES MAGISTRATE JUDGE